Jeffrey Lee MONROE and Gena Jo Monroe, Relators,

v.

Hon. Robert M. BLACKMON, Visiting Judge of the 319th District Court of Nueces County, Texas, Respondent.

No. 13–96–642–CV.

Court of Appeals of Texas, Corpus Christi.

May 15, 1997.

William R. Edwards, III, William R. Edwards, Edwards, Terry, Baiamonte & Edwards, Corpus Christi, Alfred W. Davis, Davis & Davis, Bryan, for Relators.

W. Stephen Rodgers, Rodgers, Miller, Ellison & Holt, Bryan, Benjamin Roeder, Collins & Roeder, Houston, Fred E. Davis, Davis & Davis, Bryan, Tom Hermansen, Carlos Villarreal, Hunt, Hermansen, McKibben & Barger, Corpus Christi, Marc A. Sheiness, Hirsch, Glover, Robinson & Sheiness, Houston, for Real Party in Interest.

## OPINION

CHAVEZ, Justice.

By the present mandamus proceeding, relators, Jeffrey and Gena Monroe, complain that the respondent, Judge Robert Blackmon, abused his discretion in failing to recuse a trial Judge, the Honorable Max Bennett, from presiding over the underlying lawsuit. The basis of the sought recusal is that Judge Bennett is represented in another matter, currently before the Supreme Court of Texas, by counsel for a defendant in the underlying cause. The real party in interest is Union Pacific Resources Company ("Union Pacific"), a defendant in the underlying lawsuit. We conditionally grant the writ.

We are guided by a paucity of reported Texas decisions addressing the narrow issue raised by this proceeding: Is recusal required of a trial judge when an attorney for a party to a proceeding in the judge's court is concurrently representing the judge as attorney of record before another tribunal? We determine that recusal is the singular appropriate response.

### Facts

In 1994, relators filed the underlying lawsuit against Union Pacific and other defendants in Nueces County, Texas, and were assigned to the 319th District Court, over which Judge Bennett presides. The law firm of Hunt, Hermansen, McKibben & English, L.L.P. ("Hunt, Hermansen") respresents Union Pacific in that cause. Meanwhile, the Hunt, Hermansen firm also represents Judge

Bennett in a mandamus proceeding in the supreme court, *Bennett v. Thirteenth Court of Appeals,* No. 96–0598.[2]

On September 23, 1996, relators filed a motion a recuse Judge Bennett in the underlying cause, arguing that Judge Bennett's representation by the Hunt, Hermansen firm caused his impartiality to reasonably be questioned. Judge Bennett referred the motion to recuse and the presiding judge for the administrative judicial region appointed Judge Blackmon to hear it. At the recusal hearing on October 29, 1996, Judge Bennett called himself as a witness, and then testified about the origins and nature of his relations with attorney Carlos Villarreal of the Hunt, Hermansen firm.

On November 5, 1996, Judge Blackmon issued his "Order on Motion to Recuse," which stated:

> [I]t appears from the evidence that an attorney-client relationship exists between Mr. Villarreal and Judge Bennett.
> This Court is of the opinion that Plaintiff could reasonably question the Judge's impartiality based on this relationship.
> The recusal is, therefore, appropriate, and is ordered.

Judge Bennett's response was immediate. In a letter to Judge Blackmon of the same date, and "[i]n view of your [*i.e.,* Judge Blackmon's] ruling," Judge Bennett requested a rehearing of the recusal matter. Noteworthy is the fact that Judge Bennett did not challenge Judge Blackmon's conduct of the recusal hearing until after the court issued its order, approximately one week after the initial recusal hearing.

On November 7, 1996, Judge Blackmon forwarded a letter to all parties and Judge Bennett, stating that a rehearing was scheduled for November 15, 1996, "at the Judge's request." We consider Judge Bennett's let-

ter to Judge Blackmon to have been in the nature of a pleading, insofar as rehearing of the recusal matter was responsive thereto.

At the rehearing, the appearance of attorney Villarreal of the Hunt, Hermansen firm engendered some initial confusion as to precisely who he was representing (Judge Bennett or one of the defendants?). Judge Bennett again called himself as a witness, testifying at length and being cross-examined by the parties. Judge Bennett also gave an oral argument, just as the parties did, at the close of the hearing. Judge Bennett even offered exhibits, consisting of his orders underlying the matter in which the Hunt, Hermansen firm represents him.

On November 18, 1996, the court issued its order following the rehearing, denying the motion to recuse, providing that "Judge Bennett's impartiality cannot reasonably be questioned under the circumstances." We find it curious that a different result obtained on rehearing, although a near identity of evidence and core arguments existed as between the two recusal hearings. No new findings of fact were made, and there exists no apparent justification for Judge Blackmon's change of position.

### Standard for issuance of writ

Mandamus is proper (1) to correct a clear abuse of discretion committed by the trial court, (2) when there exists no *adequate* remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992); *Discovery Operating, Inc. v. Baskin,* 855 S.W.2d 884, 885 (Tex.App.—El Paso 1993, orig. proceeding) (conditionally granting writ on relator's claim of mandatory recusal of trial judge).

### Availability of *adequate* remedy on appeal

■ We must determine whether an adequate remedy exists on appeal. *See*

---

2. The real party in interest in the instant proceeding, Union Pacific, has filed a conditional motion to recuse this court from determining this original proceeding. Union Pacific argues that this court's impartiality might reasonably be questioned in view of Judge Bennett's suit against this court in the supreme court. We dismiss the motion.

Rule 15(c) of the Texas Rules of Appellate Procedure provides generally for an *en banc* de-

termination of a motion to recuse an individual justice of the court of appeals. However, Union Pacific's motion to recuse is not brought against any individual justice. There is no provision in Texas law for the collective recusal of an entire appellate court. Accordingly, we dismiss the motion as we have no jurisdiction to entertain Union Pacific's complaint.

*Schwartz v. Jefferson,* 930 S.W.2d 957, 959 (Tex.App.—Houston [14th Dist.] 1996 orig. proceeding). Rule 18a(f) of the Texas Rules of Civil Procedure provides: "If the motion [to recuse or disqualify] is denied, it may be reviewed for abuse of discretion on appeal from the final judgment." Obviously, an appellate remedy exists for relators, so we consider whether the appeal allowed under Rule 18a(f) would be "adequate."

■ To demonstrate the absence of an adequate remedy on appeal, the relators must have suffered an effective denial of the reasonable opportunity to develop the merits of their case. *See AMR Corp. v. Enlow,* 926 S.W.2d 640, 645 (Tex.App.—Fort Worth 1996, orig. proceeding). The nonexistence of an adequate appellate remedy has been determined in analogous situations, wherein appeal from final judgment arguably exists. *See, e.g., Mendoza v. Eighth Court of Appeals,* 917 S.W.2d 787, 789–90 (Tex.1996); *K.J. Eastwood Investments, Inc. v. Enlow,* 923 S.W.2d 255 (Tex.App.—Fort Worth 1996, orig. proceeding); *Sweezy Const., Inc. v. Murray,* 915 S.W.2d 527, 530 (Tex.App.—Corpus Christi 1995, orig. proceeding). We have also held that the availability of other remedies will not prohibit mandamus to issue to correct a gross abuse of discretion. *See Corpus Christi Caller–Times v. Mancias,* 794 S.W.2d 852, 854 (Tex.App.—Corpus Christi 1990, orig. proceeding). Under the factual pattern (*i.e.,* attorney for litigant concurrently representing trial judge) of the instant case, we determine that the harm engendered by Judge Blackmon's second order will permeate all phases of proceedings in the trial court, thus precluding availability to relators of an adequate appellate remedy.

### Clear abuse of discretion

■ Aside from the "clear abuse of discretion" threshold set forth in *Walker, supra,* the supreme court has also stated that mandamus will lie to correct a "gross" abuse of discretion by the trial court. *State v. Sewell,* 487 S.W.2d 716, 718 (Tex.1972). "The relator must establish, under the facts of the case, that the facts and law permit the trial court to make but one decision." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916,

917 (Tex.1985). Put differently: "[A] clear abuse of discretion, when utilized as the basis for an original mandamus proceeding, refers to the unique situation wherein the lower court, exercising a 'discretionary' authority, has but one viable course to follow and one legitimate way to decide the question presented, but instead issues a contrary ruling." *Cessna Aircraft Co. v. Kirk,* 702 S.W.2d 321, 323 (Tex.App.—Eastland 1986, orig. proceeding). Intervention by the appellate courts is justified when relators stand to lose substantial rights, or the ability to present their claim is vitiated or severely compromised. *Walker,* 827 S.W.2d at 842–43; *Discovery,* 855 S.W.2d at 885–86.

■ Accordingly, we assess the merits of relators' claim to determine whether an abuse of discretion warranting mandamus relief has occurred.

### Rule 18b(2)(a)

Rule 18b of the Texas Rules of Civil Procedure provides:

(2) **Recusal.** A judge shall recuse himself in any proceeding in which:

(a) his impartiality might reasonably be questioned; ...

TEX.R. CIV. P. 18b. We are called on to give meaning to this nebulous standard. Analogously, where doubt exists as to a judge's pecuniary interest in a matter, doubt is resolved in favor of disqualification. *Gulf Maritime Warehouse Co. v. Towers,* 858 S.W.2d 556, 559 (Tex.App.—Beaumont 1993, writ denied). We resolve doubts raised by the Hunt, Hermansen firm's representation of Judge Bennett in favor of recusal.

By favoring recusal under the instant facts, we do not take issue with the settled proposition that all judges have the duty to sit and decide matters before them unless there exists a basis for disqualification or recusal. *See Rogers v. Bradley,* 909 S.W.2d 872, 879 (Tex.1995); *Kirby v. Chapman,* 917 S.W.2d 902, 908 (Tex.App.—Fort Worth 1996, n.w.h.). However, when there exists a reasonable question—based on objective facts—as to a judge's impartiality, recusal is mandated. Justices Gammage and Enoch suggest that, in determining whether recusal

is required pursuant to Texas Rule of Civil Procedure 18b(2)(a), the proper inquiry is whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial. *Rogers,* 909 S.W.2d at 874, 881.

In the instant case, instruments filed at the supreme court of this state, evidencing the Hunt, Hermansen firm's representation of Judge Bennett, are clearly within the public domain. As lawyers, we belong to a profession bombarded by attention from the popular media, and we feel certain that a reasonable member of the public at large appreciates the sacrosanct duty of a law firm and its lawyers to their clients. Accordingly, given the fact that the sanctity of the attorney-client relation is of common knowledge, and assuming that a reasonable member of the public at large were apprised of all matters within the public domain, we can only conclude that reasonable doubts must exist as to Judge Bennett's actual impartiality.

### 28 U.S.C. § 455

■ Congress has addressed the issue of recusal based on apparent impartiality by adding the following to Title 28, United States Code:

> **§ 455. Disqualification of justice, judge, or magistrate**
>
> (a) Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C.A. § 455 (1988). Adopted prior to the adoption of Texas Rule of Civil Procedure 18b, the federal statute is identical in relevant part to the Texas rule, and therefore the statute is a benchmark for interpreting our rule. Under 28 U.S.C. § 455(a), representation of the judge by an attorney for a litigant mandates recusal in the litigant's lawsuit. *See, e.g., Potashnick v. Port City Const. Co.,* 609 F.2d 1101, 1110–12 (5th Cir. 1980).

3. Tex. Gov't Code Ann. § 74.141 (Vernon 1988).

### Authoritative commentary

Commentators, too, recognize that factual patterns similar to the instant case present persuasive grounds for recusal. *See, e.g.,* 46 Am.Jur. 2d *Judges* § 166 (1994); Marcia G. Robeson, Annotation, *Construction and Application of 28 USCS § 455(a) Providing for Disqualification of Justice, Judge, Magistrate, or Referee in Bankruptcy in Any Proceeding in Which His Impartiality Might Reasonably Be Questioned,* 40 A.L.R. Fed. 954, 962 (1978); *see also* William W. Kilgarlin and Jennifer Bruch, *Disqualification and Recusal of Judges,* 17 St. Mary's L.J. 601, 639 (1986) (noting ethics committee opinion which states that a judge should recuse where attorney for a litigant is presently serving as trustee, with discretionary powers, of a trust in which the judge's wife is a beneficiary).

### Policy considerations

The real party in interest, Union Pacific, argues that, were this court to mandate recusal, an untoward precedent would obtain and our state's judiciary would be left defenseless *vis-a-vis* lawsuits filed against them in their official capacity, in that the bar would be reluctant to undertake representation of the bench for fear of possible subsequent recusal or disqualification. We find this argument unpersuasive for two principal reasons: (1) if requested, the attorney general of this state must defend trial judges in such lawsuits,[3] and (2) fear of possible subsequent recusal or disqualification can, in our view, only be motivated by the desire to forum-shop. The correct policy consideration in this regard is the promotion of objectively impartial tribunals, to which the concern expressed by the real party in interest is inapposite.

### Discussion

Judge Blackmon initially decided this matter correctly, subsequently erring when he reversed his prior order. Judge Bennett apparently participated fully in the determination of the motion to recuse in the proceedings below, and this participation in the recusal matter was extraordinary. Judge Bennett's opposition to the recusal motion aligned him with the defendants and against

the plaintiffs in the underlying case, destroying any reasonable appearances of impartiality.

■ Active participation by a challenged judge in recusal proceedings can only lead to the judge's recusal. *See generally Blanchard v. Krueger*, 916 S.W.2d 15 (Tex.App.—Houston [1st Dist.] 1995, orig. proceeding). Contrary to the view expressed by Justice Dorsey that challenges to Judge Bennett founded on Rule 18b(2)(a) are unripe in the instant proceeding, we believe that Judge Blackmon should have *sua sponte* addressed the issue. Clearly, he was aware of the governing standard, as his order of November 5, 1996, contains the standard's talismanic language.

Judge Blackmon had but one viable course of action—to order Judge Bennett's recusal. By withdrawing his initial order of recusal, Judge Blackmon grossly abused the discretion committed to him, warranting correction in the instant proceeding. Accordingly, the petition for writ of mandamus is conditionally granted to order respondent to vacate his order of November 18, 1996. We are confident that Judge Blackmon will act in accordance with this opinion. The writ will issue only in the event he fails to comply.

Dissenting opinion by DORSEY, J., joined by SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr., JJ.

Concurring opinion by CHAPA, Chief Justice (Retired).

DORSEY, Justice, dissenting.

I disagree with the majority that mandamus should conditionally issue. If Judge Blackmon abused his discretion by failing to *recuse* Judge Bennett, mandamus is not an appropriate remedy because there is an adequate remedy by the appeal of the decision after trial. Judge Blackmon could not have abused his discretion by failing to *disqualify* Judge Bennett, because no basis for disqualification had been presented to him by motion or established by evidence for him to rule *sua sponte*. Accordingly I respectfully dissent.

Mandamus will issue only to correct a clear abuse of discretion or violation of a duty imposed by law when that abuse cannot be remedied by appeal. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). Recusal and disqualification are not synonymous and constitute different attacks on the ability of a judge to sit and hear a case.

### I. Disqualification

The more fundamental is disqualification, for if a judge is disqualified from sitting in a case he is without jurisdiction to rule. Any order or judgment by a disqualified judge is void, without effect, and subject to collateral attack. *See Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 148 (Tex.1982). The Texas Constitution provides in Article V, Section 11: "No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case." TEX. CONST. art. V, § 11.

Only the first basis for constitutional disqualification is argued here, that Judge Bennett is "interested" in the case. However, the interest spoken of in the constitution is a direct pecuniary or property interest in the subject matter of the litigation that would result in a pecuniary gain or loss to the judge as an immediate result of the judgment. *Cameron v. Greenhill*, 582 S.W.2d 775, 776 (Tex.1979). There has been no allegation or evidence of a financial interest by Judge Bennett; rather, the petitioner complains of Judge Bennett's voluntary and deliberate participation in the recusal hearings.

It has long been the law in Texas that a judge is disqualified from hearing any case in which he has an interest. *Love v. Wilcox*, 119 Tex. 256, 28 S.W.2d 515, 518 (Tex.1930) ("Every Constitution of Texas since that of 1845 has forbidden a judge to sit in any case wherein he is interested."). In *Love*, the supreme court noted that

So often has this phrase, "case wherein he is interested," been interpreted that its meaning no longer admits of reasonable doubt.... In Texas, our constitutional prohibition has been uniformly construed

as requiring the judge to sit who is interested in the question to be decided but who has no direct and immediate interest in the judgment to be pronounced. *Id.* That "direct and immediate interest" which *constitutionally* disqualifies a judge is the interest which stems from the possibility that the judge will enjoy some personal benefit or suffer some personal loss by the judgment to be rendered. *Id.* "The judge must, by the judgment in the case, gain or lose something, the value of which may be estimated." *King v. Sapp,* 66 Tex. 519, 2 S.W. 573, 574 (1886); *see also Moody v. City of University Park,* 278 S.W.2d 912, 919 (Tex. Civ.App.—Dallas 1955, writ ref'd n.r.e.); 47 TEX. JUR. 3d *Judges* § 31 (1986). If a judge's interest in the case is indirect, uncertain, or remote, and the result of the suit will not necessarily subject him to a personal gain or loss, he is not disqualified to sit in the case. *Hidalgo County Water Imp. Dist. No. 2 v. Blalock,* 157 Tex. 206, 301 S.W.2d 593, 596–97 (1957) (citing *Love,* 119 Tex. 256, 28 S.W.2d 515; *City of Oak Cliff v. State,* 97 Tex. 391, 79 S.W. 1068 (1904)).

"The interest that disqualifies a judge does not signify every bias, partiality, or prejudice that may be included in the broadest sense of the word 'interest,' as contra distinguished from its use as implicating a pecuniary or personal right or privilege in some way dependent on the result of the case." 47 TEX. JUR. 3d *Judges* § 31 (1986) (citing *McInnes v. Wallace,* 44 S.W. 537 (Tex.Civ.App.1898, no writ)). The fact that a judge may be biased or prejudiced, standing alone, does not disqualify him under the Texas Constitution. *Merchants' Nat'l Bank v. Cross,* 283 S.W. 555, 557 (Tex.Civ.App.—San Antonio 1926, no writ).

Nothing about Judge Blackmon's decision either benefitted or harmed Judge Bennett in any personal way. Judge Blackmon's decision determined whether or not Judge Bennett would preside over the underlying lawsuit, but it did not mean that Judge Bennett would personally gain or lose anything of estimable value, and therefore did not implicate constitutional disqualification.

If we hold that Judge Bennett's active voluntary participation in the recusal hearing created an "interest" in the case so as to disqualify him under the constitution, we greatly expand the definition of "interest" of Art. V, Section 11. In our jurisprudence an interest that would require disqualification has always been held to be something of value that can be estimated, *i.e.,* a property interest. Curiosity or concern about the correctness of a ruling does not equate to an interest that has a monetary value. *See, e.g., Galveston & H. Inv. Co. v. Grymes,* 94 Tex. 609, 64 S.W. 778, 778 (1901) (opinion on reh'g) (supreme court justice not disqualified simply because he participated in prior decision at intermediate appellate court level); *Grigsby v. May,* 84 Tex. 240, 19 S.W. 343, 350 (1892); *River Rd. Neighborhood Assoc. v. South Texas Sports, Inc.,* 673 S.W.2d 952, 953 (Tex.App.—San Antonio 1984) (two associate justices not disqualified for having received campaign contributions from persons associated with appellee); *Rocha v. Ahmad,* 662 S.W.2d 77, 78–79 (Tex.App.—San Antonio 1983, no writ) (justices of court of appeals not disqualified from sitting on case in which lawyer who had contributed to their campaign was involved as counsel); *Niles v. Dean,* 363 S.W.2d 317, 320–21 (Tex.Civ. App.—Beaumont 1962, no writ) (judge not disqualified when his son was attorney for plaintiff but not a party himself); *Wagner v. State,* 217 S.W.2d 463, 464–66 (Tex.Civ. App.—San Antonio 1948, writ ref'd n.r.e.) (judge who owned land in proposed junior college district not disqualified to preside over *quo warranto* action challenging propriety of district); *But see Indemnity Ins. Co. of N. Am. v. McGee,* 163 Tex. 412, 356 S.W.2d 666, 668–69 (1962) (attorney in workers' compensation case was a party to the case, and therefore the trial judge, who was the attorney's cousin, was disqualified); *Pennington v. State,* 169 Tex.Crim. 183, 332 S.W.2d 569, 570 (Tex.Crim.App.1960) (judge disqualified when he was formerly the district attorney and actively participated in convicting appellant of crimes being used as enhancements in punishment phase of new trial).

The majority cites *Blanchard v. Krueger,* 916 S.W.2d 15, 19 (Tex.App.—Houston [1st Dist.] 1995, orig. proceeding) for authority

that a judge who participates in his own recusal hearing becomes interested in the outcome and is therefore disqualified. However, in *Blanchard*, Judge James Blackstock, the judge that the parties were seeking to recuse, filed a pleading and intervened as a party in the action to recuse him and sought attorneys fees as damages in contesting the recusal action. *Id.* at 17. The intervention and seeking of damages gave Judge Blackstock a pecuniary interest in the outcome of the proceedings and resulted in his disqualification. *Id.* at 18–19. No such intervention by pleading for affirmative relief was done by Judge Bennett. There is no evidence of his pecuniary or property interest to trigger his disqualification.

The issue whether Judge Bennett was constitutionally disqualified was not before Judge Blackmon. Mandamus should not issue to require him to rule on a matter he has not addressed. The motion to recuse was filed September 23 based on Judge Bennett's relationship with the law firm of Hunt, Hermansen, McKibben & English. Judge Blackmon was appointed to hear the matter by the presiding judge of the administrative region, Judge Darrell Hester. Judge Blackmon heard the matter and ruled on November 5, reheard it and ruled again on November 18. On December 9 petitioners filed an amendment to their motion to recuse, urging for the first time the personal interest of Judge Bennett in the outcome of the hearings as a ground for disqualification. Judge Blackmon declined to hear the amendment because he had already ruled on the motion to recuse, the matter on which he was appointed. Consequently, Judge Blackmon did not rule on the issue of disqualification. Though mandamus would ordinarily be available to review the overruling of a motion to disqualify, the present ground for disqualification was not before Judge Blackmon at the time he heard and determined the present motion to recuse.

The Monroes contend that their ground for disqualification should have been considered by Judge Blackmon as a "trial amendment." In *Blanchard*, the court of appeals held it an

abuse of discretion for the assigned judge to deny a "trial amendment" filed at the conclusion of the hearing on motion to recuse and adding a ground that had been asserted without objection at that hearing. *Id.* at 17–18. However, a motion to disqualify or recuse may not be amended in this manner to include grounds which were not raised before the assigned judge denied the original motion. *See Manges v. Martinez*, 683 S.W.2d 137, 139 (Tex.App.—San Antonio 1984, orig. proceeding). In the present case, the Monroes filed their "trial amendment" almost a month after the second hearing and Judge Blackmon's denial of the original motion to recuse. I cannot hold that Judge Blackmon abused his discretion in failing to grant a motion to disqualify that was never referred to him for determination or presented to him at the hearing on motion to recuse.

## II. Recusal

Mandamus may be appropriate to review the decision of an assigned judge not to *disqualify* the trial judge. *See Blanchard*, 916 S.W.2d at 19. Because constitutional disqualification of a judge renders void any of his orders involving judicial discretion, it leaves no adequate remedy by appeal from an incorrect determination not to disqualify the judge. *Id.; see also Packer*, 827 S.W.2d at 840–42.

However, an assigned judge's erroneous denial of a motion to recuse may be reviewed on appeal. Rule of Civil Procedure 18a(f) provides that, "[i]f the motion [to recuse] is denied, it may be reviewed for abuse of discretion on appeal from the final judgment." Tex.R. Civ. P. 18a(f); *see Thomas v. Walker*, 860 S.W.2d 579, 581 (Tex.App.-Waco 1993, orig. proceeding). The general presumption is that remedy by appeal is adequate absent extraordinary circumstances. I see no such circumstances in this case to distinguish it from any other failure to recuse. Therefore, even if Judge Blackmon abused his discretion in failing to recuse Judge Bennett, mandamus is not an appropriate remedy to correct the error.[1]

---

1. The only instances in which mandamus has been found to be appropriate to review action on a motion to recuse is where the challenged judge fails to comply with his duty under Rule of Civil Procedure 18a(c) & (d) to either recuse himself or refer the motion. When the motion has not

The majority holds that although appeal may be had from a refusal to recuse, the appeal is not an adequate remedy under the circumstances, thus calling for the extraordinary writ of mandamus. In order to determine whether the remedy by appeal is adequate or not, it is instructive to examine the stringent tests established by the Texas Supreme Court in *Canadian Helicopters, Ltd. v. Wittig,* in which mandamus was sought to review the denial of a special appearance. 876 S.W.2d 304, 306–10 (Tex.1994). Although the supreme court recognized that the personal jurisdiction over petitioner was suspect, and that the trial would be a wasted and expensive exercise, it held that an appeal was an adequate remedy and refused to grant the writ. *Id.* It held that absence of personal jurisdiction, like questioned subject matter jurisdiction, can be remedied by appeal so that mandamus will not lie. *Id; see Bell Helicopter Textron, Inc. v. Walker,* 787 S.W.2d 954, 955 (Tex.1990).

If the appellate remedy is adequate when the jurisdiction of the court over the case or over the party is in doubt, it is certainly adequate when a judge's biases are challenged. If there is an absence of personal or subject matter jurisdiction, the trial is for naught, with the attendant waste of money and personal resources that were invested in the useless trial. However, a judge's biases are manifested by the legal and factual rulings made. A review of those rulings is what is done in an ordinary appeal. I do not see why an appeal would be an inadequate remedy.

Because one of the requirements for the issuance of the writ of mandamus has not been met—the absence of an adequate remedy by appeal—the writ should not issue and the majority errs in so doing.

I respectfully dissent.

SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr., J., join in the dissent.

CHAPA, Chief Justice (Retired), concurring.

While I concur with Justice Chavez, I write to address the constitutional disqualification issue which becomes relevant due to the erroneous denial of the trial amendment by Judge Blackmon. The facts leading up to this proceeding are generally set out in the opinion of Justice Chavez.

Relators contend that mandamus should issue because:

1) Judge Blackmon erred on rehearing by withdrawing his original ruling recusing Judge Bennett and then refusing to recuse Judge Bennett, and

2) Judge Blackmon erred in refusing to allow a Trial Amendment to the Motion to Recuse which raised the issue of the constitutional disqualification of Judge Bennett. Because Judge Blackmon erred in refusing the trial amendment, the constitutional disqualification issue should be addressed.

## CONSTITUTIONAL DISQUALIFICATION

The Texas Constitution provides in relevant part that "[n]o judge shall sit in any case wherein he may be interested...." TEX. CONST. art. V, § 11. "It is a settled principle of law that the interest which disqualifies a judge is that interest, however small, which rests upon a direct pecuniary or personal interest in the result of the case presented to the judge or court." *Cameron v. Greenhill,* 582 S.W.2d 775, 776 (Tex.1979); *Blanchard v. Krueger,* 916 S.W.2d 15, 19 (Tex.App.—Houston [1st Dist.] 1995, orig. proceeding). "Constitutional disqualification of a judge renders any order involving judicial discretion absolutely void [and a] writ of mandamus will issue to correct the violation of a duty imposed by law when there is no

been referred for a hearing to the administrative judge or another judge designated by him, the movant has not had an opportunity to develop a record on his recusal motion, and, without a record, he has no adequate remedy by appeal. *Winfield v. Daggett,* 846 S.W.2d 920, 922 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding). The failure to refer may be reviewed by

mandamus. The other situation is when the assigned judge is objected to by counsel. *See* TEX. GOV'T CODE ANN. § 74.053 (Vernon Pamph. 1997). If objected to under section 74.053, the judge must step down, or mandamus may issue. *Brown v. Mulanax,* 808 S.W.2d 718, 720 (Tex. App.—Tyler 1991, orig. proceeding).

other adequate remedy." *Id.* at 19 (citing *Buckholts I.S.D. v. Glaser,* 632 S.W.2d 146, 148 (Tex.1982) and *Canadian Helicopters, Ltd. v. Wittig,* 876 S.W.2d 304, 305 (Tex. 1994)). Therefore "mandamus relief is appropriate" when it appears that a judge is constitutionally disqualified. *Blanchard,* 916 S.W.2d at 19.

However, "[i]f his interest in the question is indirect, uncertain, or remote, and the result of the suit will not necessarily subject him to a personal gain or loss, he is not disqualified to sit in the case." *Hidalgo County Water Improve. Dist. No. 2 v. Blalock,* 157 Tex. 206, 301 S.W.2d 593, 596 (1957). While I am unconvinced with the suggestion that an interest must be pecuniary to justify constitutional disqualification, it must be direct, certain, and not remote.

In *Blanchard,* the court held that a judge who filed a general denial and a request for attorneys fees in the underlying case was constitutionally disqualified. The court stated:

Courts have held that a judge should not voluntarily participate in a mandamus action that challenges the judge's refusal to recuse himself. *Rapp v. Van Dusen,* 350 F.2d 806, 810 (3d Cir.1965); *U.S. v. Craig,* 875 F.Supp. 816, 818 (S.D.Fla.1994). In *Rapp,* 350 F.2d at 813, the court of appeals said a judge who is challenged by a motion to recuse should not hire his own lawyer or designate the lawyers for the real party in interest as his lawyer. In *Craig,* 875 F.Supp. at 818, the district court held that challenged judge was required to be recused because the judge filed a brief in response to a mandamus action following the judge's refusal to recuse himself. By filing a response, the judge made an appearance in the case and became aligned with the party opposing recusal. *Id.; see also Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155, 166 (3d Cir.1993)(judge should not have written letter to plaintiff objecting to statements in the Plaintiff's petition for mandamus that was filed to challenge the denial of a motion to recuse).

*Id.* at 19 n. 9.

In *Gulf Maritime Warehouse Co.* the court held that the trial judge was constitutionally disqualified because he may have had an interest in the case. The court stated:

Where doubt exists as to a judge's interest that doubt should be resolved in favor of disqualification. *Lindsley v. Lindsley,* 152 S.W.2d 415, 432 (Tex.Civ.App.—Dallas 1941)(opinion on rehearing), *rev'd on other grounds,* 139 Tex. 512, 163 S.W.2d 633 (1942). The Dallas Court of Civil Appeals provided further that the constitutional language "may be interested" implies that if there is doubt, the judge should be disqualified.

* * *

Public policy demands that the judge who sits in a case act with absolute impartiality. *Pendergrass [Pendergass] v. Beale,* 59 Tex. 446, 447 (1883). Beyond the demand that a judge be impartial, however, is the requirement that a judge *appear to be* impartial so that no doubts or suspicions exist as to the fairness or integrity of the court. *Aetna Life Ins. v. Lavoie,* 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986); *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980).

* * *

If a judge is disqualified under the Constitution, he is absolutely without jurisdiction in the case, and any judgment rendered by him is void, without effect, and subject to collateral attack. [*Disqualification and Recusal of Judges,* 17 ST. MARY'S L.J. 599 (1986) ].

* * *

Disqualification may be raised at any time. *See Buckholts Indep. School Dis. v. Glaser,* 632 S.W.2d 146, 148 (Tex.1982). Furthermore, disqualification may even be raised for the first time in a collateral attack on the judgment. *See Lee v. State,* 555 S.W.2d 121, 124 (Tex.Crim.App.1977); *Ex Parte Washington,* 442 S.W.2d 391, 393 (Tex.Crim.App.1969). Either a trial court or appellate court may raise the question of disqualification on its own motion. *See Lee,* 555 S.W.2d at 122; *City of Houston v. Houston Lighting & Power Co.,* 530 S.W.2d 866, 868 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.); *Pinch-*

back v. Pinchback, 341 S.W.2d 549, 553 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n.r.e.).

Gulf Maritime Warehouse Co. v. Towers, Sr., 858 S.W.2d 556, 558–60 (Tex.App.—Beaumont 1993, writ denied).

## TRIAL AMENDMENTS

Tex.R. Civ. P. 66 provides in relevant part that the trial "court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits...." "Although the application of [Rule 66] is within the sound discretion of the trial judge, nevertheless, the interpretation followed by the appellate courts is that such discretion is to be exercised liberally in favor of justice." Mergele v. Houston, 436 S.W.2d 951, 955 (Tex.Civ.App.—Amarillo 1969, writ ref'd n.r.e.)(citing Rose v. Shearrer, 431 S.W.2d 939 (Tex.Civ.App.—San Antonio 1968, no writ); Alamo Ambulance Service, Inc. v. Moulton, 402 S.W.2d 200 (Tex.Civ. App.—San Antonio 1966), aff'd, 414 S.W.2d 444 (Tex.1967)). Therefore, trial amendments are mandatory when there is no opposition to the amendment, and the trial judge abuses his discretion in denying the motion to amend under these circumstances. Blanchard, 916 S.W.2d at 18.

## DISCUSSION

The trial amendment alleged that Judge Bennett should be constitutionally disqualified for appearing to have an interest in the case as prohibited by the Texas Constitution. TEX. CONST. art. V, § 11. The amendment however, failed to allege any pecuniary or property interest. Instead it seemed to assert a personal interest based on the attorney/client relationship between Judge

Bennett and the opposing attorneys and his unusual activities during the recusal proceedings.

Since "disqualification may be raised at any time," Judge Blackmon clearly abused his discretion in denying the amendment. Gulf Maritime Warehouse Co., 858 S.W.2d at 560; see Buckholts, 632 S.W.2d at 148. Further, there is no indication in this record of any opposition to the amendment by any party. Therefore, under these circumstances, "the trial amendment was mandatory" and Judge Blackmon abused his discretion in denying the motion to amend. Blanchard, 916 S.W.2d at 18.

Moreover, in denying the trial amendment Judge Blackmon failed "to analyze [and] apply the law correctly."[1] The order denying the motion to recuse was signed by Judge Blackmon on November 18, 1996. The Motion for Leave to File the Trial Amendment in question was filed on December 9, 1996. On December 10, 1996, Judge Blackmon denied leave to file the amendment, stating:

I am of the opinion this court does not have Jurisdiction to hear this matter. Judge Bennett's recusal has been heard, denied and an order signed.

Therefore, the sole basis for denying leave to file the amendment was Judge Blackmon's judicial determination that he had no jurisdiction because the recusal had been heard, denied and an order signed. This ruling is obviously erroneous.

If jurisdiction terminates upon a hearing on a motion to recuse and the signing of an order as Judge Blackmon ruled, then Judge Blackmon's court order before this court withdrawing his original order recusing Judge Bennett and denying the motion to recuse is void for lack of jurisdiction. This is so, because that order was entered after the first recusal hearing and after Judge Black-

---

1. "A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. See Joachim v. Chambers, 815 S.W.2d 234, 240 (Tex.1991)(trial court abused discretion by misinterpreting Code of Judicial Conduct); NCNB Texas National Bank v. Coker, 765 S.W.2d 398, 400 (Tex.1989)(trial court abused discretion by failing to apply proper legal standard to motion to disqualify counsel); Eanes ISD v. Logue, 712 S.W.2d 741, 742 (Tex.1986)(trial court abused discretion by erroneously finding constitutional violation)." Walker v. Packer, 827 S.W.2d 833, 840 (Tex.1992).

mon entered the original order recusing Judge Bennett. Further, the order denying leave to file was signed within the 30 days that the trial court has plenary powers, and without consideration that constitutional disqualification of a judge may be raised at any time. *Gulf Maritime Warehouse Co.,* 858 S.W.2d at 560. The refusal to allow the trial amendment under these circumstances amounts to gross abuse of discretion which justifies mandamus relief under appropriate circumstances. *State v. Sewell,* 487 S.W.2d 716, 718 (Tex.1972).

Thus, this court should grant the motion to amend and consider whether Judge Bennett was constitutionally disqualified under the facts presented to Judge Blackmon. *Blanchard,* 916 S.W.2d at 19.

## DISCUSSION

Although this record reflects questionable participation by Judge Bennett in the recusal proceedings below, the immediate question is, whether the facts presented established the sufficient amount of interest in the underlying case to constitutionally disqualify Judge Bennett.

During the initial recusal hearing on the 29th of October, 1996, Judge Bennett voluntarily appeared [2] and requested permission to testify, aligning himself with the position of the party opposing the motion to recuse. The law firm representing the party opposing the motion to recuse with which Judge Bennett aligned himself, was the same law firm that was representing Judge Bennett before the Supreme Court of Texas at the same time. Ironically, it was this fact which formed the basis for the motion to recuse initially. On November 5, 1996, Judge Blackmon correctly entered an order recusing Judge Bennett.

However, on November 5, 1996, Judge Bennett personally wrote to Judge Blackmon on stationery of 319th Judicial District Court, stating:

In view of your ruling, and considering that the hearing started early and was

practically over before I arrived, on time, for the 9:30 a.m. hearing, I request that this matter be heard again, so that *I can fully participate in the matter,* and so that a full record can be made on this very significant policy matter. [emphasis added].

On November 7, 1996, Judge Blackmon responded, stating:

The recusal of Judge Max Bennett is set for rehearing, *at the Judge's request,* on November 15th, 1996 at 3:00 p.m. [emphasis added].

At the rehearing on November 15, 1996, Judge Bennett again voluntarily appeared and testified on behalf of the parties opposing the motion to recuse represented at the rehearing not only by the same law firm that represented Judge Bennett at the same time, but also by the individual member of the firm which was representing Judge Bennett. During final arguments before the court by both parties, Judge Bennett extraordinarily also made a final statement to the court, again aligning himself with the position of the party opposing the motion to recuse.

While these extraordinary activities of Judge Bennett raised the appearance of partiality, this record reflects insufficient evidence to establish that Judge Bennett had either a pecuniary or personal interest in the outcome of the underlying case which would justify a constitutional disqualification.

## RECUSAL

However, I agree with the opinion of Justice Chavez that Judge Blackmon originally correctly recused Judge Bennett under the provisions of Tex.R. Civ. P. 18b, and abused his discretion thereafter by withdrawing his earlier order and denying the motion to recuse on rehearing. I also agree that mandamus relief is warranted.

Tex.R. Civ. P. 18b(2)(a) provides that "[a] judge shall recuse himself in any proceeding in which: (a) his impartiality might reasonably be questioned; ...." In *Rogers v. Bradley,* the Texas Supreme Court estab-

---

**2.** This record does not reflect that Judge Bennett was subpoenaed for either the first or second     recusal hearing.

lished that the proper inquiry to be made under Tex.R. Civ. P. 18b(2)(a) is "whether a reasonable member of public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial." *Rogers v. Bradley*, 909 S.W.2d 872, 881 (Tex.1995).

28 U.S.C. 455(a) (1988) is identical to Tex.R. Civ. P. 18b(2)(a) in its provision that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The interpretation of the provision by the court in *In re Cargill, Inc.* is instructive:

> The disqualification requirements of section 455(a) is triggered, despite the lack of any actual bias on the judge's part, if a reasonable person, knowing all the circumstances, would question the judge's impartiality. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 861–62, 108 S.Ct. 2194, 2203–04, 100 L.Ed.2d 855 (1988). Most observers would agree that a judge should not hear a case argued *by an attorney who, at the same time, is representing the judge in a personal matter.* [emphasis added] *See 13A Charles Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure* § 3549, at 614 (1984)(citing cases). Although the appearance of partiality is attenuated when the lawyer appearing before the judge is a member of the same law firm as the Judge's personal counsel, but not the same individual, many of the same cautionary factors are still at play. *See e.g. 2 Administrative Office of the U.S. Courts, Guide to Judiciary Policies and Procedures, V–32 (1995)* (expressing the view that "where an attorney client relationship exists between the judge and the lawyer whose law firm appears in the case, the judge should recuse absent remittal"). This principle would seem to have particular force where, as here, the law firm is small and the judge's lawyer is a name partner.

*In re Cargill, Inc.*, 66 F.3d 1256, 1260 n. 4 (1st Cir.1995).

It is uncontested that the same law firm representing one of the parties in the underlying suit also represents Judge Bennett at the same time. In fact, on rehearing of the motion to recuse, not only did the law firm representing Judge Bennett appear on behalf of the party with which Judge Bennett aligned himself, but the individual member of the law firm representing Judge Bennett appeared on behalf of the party. The fiduciary relationship that was created between Judge Bennett and his attorneys permitted and indeed encouraged private and confidential communications between client and attorney, which posed the possibility of inadvertent ex parte communications involving the underlying suit. Thus, the appearance of partiality is raised. Added to this, is the extraordinary participation of Judge Bennett in both recusal hearings which not only directly brought about the rehearing after he had been recused, but also directly aligned him with the party in the case below represented by the same attorneys representing Judge Bennett. On rehearing, Judge Bennett and the attorneys representing both the party in the underlying case objecting to the recusal and Judge Bennett, succeeded in obtaining an order from Judge Blackmon withdrawing the original recusal order and denying the motion to recuse.

Contrary to the contention that Judge Bennett was merely protecting his jurisdiction, his actions were indeed extraordinary and went beyond what is permissible for a trial judge. A hearing on a motion to recuse is in effect an appeal from the ruling of the trial court refusing to recuse himself. There is no real distinction between this form of appeal and any other. If every trial judge personally participated in this manner every time a ruling of the court was challenged, chaos would reign. Whether intended or not, such a situation would create the appearance that the judge was lending his personal prestige and the prestige of his office to one party or the other. This is prohibited. The appearance of partiality is unescapable under these circumstances.

I agree with Justice Chavez, that any member of the public apprised of these circumstances would conclude that reasonable doubts exist as to Judge Bennett's actual impartiality which requires recusal. I fur-

ther agree that these circumstances dictate the conclusion that the abuse of discretion was gross, which warrants mandamus relief. *Sewell,* 487 S.W.2d at 718; *see Corpus Christi Caller–Times v. Mancias,* 794 S.W.2d 852, 854 (Tex.App.—Corpus Christi 1990, orig. proceeding).